## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **RALPH ROSARIO-DIAZ**<br>　　　**Petitioner**<br><br>　　　**v.**<br><br>**UNITED STATES OF AMERICA**<br>　　　**Respondent** | **Civil No. 03-1998(SEC)**<br>**[Related to Criminal No. 00-153(SEC)]** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Ralph Rosario-Díaz (hereafter "Rosario") filed a Verified Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 on September 15, 2003 (**Docket No. 1**). Rosario asserts that he was denied effective assistance of counsel. The petition does not specifically state what relief Rosario seeks, but considering the nature of his petition it must be assumed petitioner seeks to vacate or set aside his sentence. The government responds that Rosario's claims are totally devoid of merit (**Docket No. 6**). Rosario's counsel at the trial level, José R. Aguayo-Caussade, also responded to Rosario's petition (**Docket No. 4**). An evidentiary hearing was held on February 9, 2004[1] (**Docket No. 9**).

This matter was referred to the undersigned for report and recommendation (**Docket No. 2**). For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the petition be **GRANTED in part** and **DENIED in part**.

## I.    Factual Background

Rosario and other defendants were indicted on May 6, 1996, with aiding and abetting each other in a carjacking that resulted in the death of the victim, in violation of 18 U.S.C. §§ 2 and 2119(3)

---

[1]The transcript of proceedings mistakenly states that the hearing was held on January 22, 2004 (**Docket No. 10**).

(Criminal Case No. 95-235(DRD)).  A second count charged a conspiracy to commit the carjacking in violation of 18 U.S.C. § 371.   Rosario was convicted on both counts following a jury trial and ultimately sentenced to life in prison on each count, the sentences to run concurrently.  The conviction was reversed on appeal on January 31, 2000, and a petition for rehearing filed by the Government was denied on April 27,  2000.

Thereafter on June 14, 2000, Rosario was indicted in a two-count indictment in Criminal Case No. 00-153(SEC).  Count One of the Indictment charged Rosario with conspiracy to possess with intent to distribute heroin, cocaine and cocaine base in violation of 21 U.S.C. § 846.  Count Two charged Rosario with money laundering in violation of  18 U.S.C. §§1956(a)(1) and 1956(h).  Rosario was arrested on June 26, 2000, and an initial appearance was held on the same date.  Rosario  was arraigned and a detention hearing held on July 7, 2000.  He was detained without bail pending trial (Criminal No. 00-153(SEC), Docket No. 10).

On June 14, 2001, Rosario's counsel authored a letter to the Attorney General concerning the Government's "Petite Policy" regarding successive prosecutions and inquired how it affected his client. Attorney Aguayo requested that the Department of Justice abide by its policy and dismiss the June 14, 2000 indictment against his client contending it was a re-prosecution of a previous case.  His request was denied by the Department of Justice on January 29, 2002, after the Department of Justice concluded that the "Petite Policy" did not apply.

Next, on March 18, 2002, Rosario's attorney filed a Motion to Dismiss based upon vindictive prosecution (Criminal No. 00-153(SEC), Docket No. 73).  However, the motion was denied as premature.  *Id.* at Docket No. 89.  The Court noted that only after Rosario had been convicted and sentenced in the second case (i.e. 00-153(SEC)) could the question of whether he was punished more heavily be answered.

A change of plea hearing was held on April 8, 2002 (Criminal No. 00-153(SEC), Docket No. 101). At that time Rosario withdrew his plea of not guilty and plead guilty to Count One of the Indictment (Criminal No. 00-153(SEC), Docket No. 101). In doing so, Rosario entered into a plea agreement with the government (Criminal No. 00-153(SEC), Docket No. 100).

The plea agreement entered into between the parties provided that Rosario agreed to plead guilty to Count One of the indictment which charged him with a violation of 21 U.S.C. § 846 (Criminal No. 00-153(SEC), Docket No. 100). The agreement further provided in pertinent part that:

> 2. The penalty for Count I is a mandatory minimum term of TEN (10) years imprisonment, and a maximum of LIFE IMPRISONMENT, . . . .
> 3. [D]efendant acknowledges that the Court shall impose a sentence in accordance with the applicable provisions(s) of the Sentencing Guidelines, Title 18 United States Code, Section 3551, et. seq.    (hereinafter Guidelines), without regard to any statutory minimum sentence, if the court finds that the defendants meets the criteria contained in Title 18, United States Code, Section 3553(f)(1)-(5) and Guidelines § 5C1.2). . .
> 6. The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge and will be imposed in accordance with the Guidelines (including the Guidelines Policy Statements, Application, and Background Notes). The defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. If the Court should impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw the guilty plea, and will remain bound to fulfill all of the obligations of this Plea Agreement.
> 7. The United States and the defendant agree to the following Sentencing Guidelines calculations for Count I:
> a. . . .
> b. . . .
> c. The defendant was a leader of a criminal activity, therefore the base offense level shall increase by **TWO (2)** levels, pursuant to U.S.S.G. 3B1.1 . . .
> e. Based on the guideline sentencing factors listed above, the TOTAL OFFENSE LEVEL shall be **THIRTY-SEVEN (37)**. . . .
> f. The United States and the defendant agree that no further adjustments or departures to the defendant's base offense level shall be sought by the parties. The parties will recommend a sentence of imprisonment of **THREE HUNDRED (300)** months of imprisonment.
> g. The parties do not stipulate any assessment as to defendant's Criminal History Category. However, the parties agree that he should not be granted three points for his 1992 narcotics drug convictions. The parties assume that defendant's Criminal History Category is III.

8. . . .

9.  The defendant represents to the Court to be satisfied with counsel, Jose Aguayo, and indicates that counsel has rendered effective assistance.

. . .

15.   The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty.

Criminal No. 00-153(SEC), Docket No. 100.  The plea agreement is initialed by Rosario on each page and is also signed by him.

    As noted above, Rosario entered his guilty plea in open court.  Prior to entry of his plea the following excerpted colloquy occurred between the presiding District Judge and Rosario.

**THE COURT**: Sir, have you received a copy of the indictment pending against you, . . . and have you fully discussed those charges and the case in general with your counsel, Mr. Aguayo?

**THE DEFENDANT**: Yes.

**THE COURT**: Are you fully satisfied with the counsel, representation, and advise [sic] given to you by your attorney, Mr. Aguayo?

**THE DEFENDANT**: Yes, I am.

**THE COURT**: Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea, and that you would then have a right to trial by jury?  That at such trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt?

**THE DEFENDANT**: Yes. . . .

**THE COURT**: Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you would have waived or given up your right to a trial, as well as those other rights associated with the trial, as I have just described them?

**THE DEFENDANT**: Yes. . . .

**THE COURT**: Sir, did you have an opportunity to read and discuss the plea agreement with your counsel before you signed it?

**THE DEFENDANT**: Yes.

**THE COURT**: Do you understand the terms of the plea agreement?

**THE DEFENDANT**: Yes.

**THE COURT**: Mr. Aguayo, have you explained this agreement to the defendant in Spanish and are you satisfied that he understands it?

**MR. AGUAYO**: Yes, I do, Your Honor.  However, the defendant also speaks English. . . .

**THE COURT**: Do you understand that by entering into this plea agreement you will have waived or given up your right to appeal all or part of the sentence?

> **THE DEFENDANT**: Yes.
> **THE COURT**: Has anyone made any promise or assurance to you of any kind in an effort to induce you to sign the plea agreement in this case?
> **THE DEFENDANT**: No.
> **THE COURT**: Has anyone attempted in anyway to force you to sign the plea agreement in this case?
> **THE DEFENDANT**: No.
> **THE COURT**: Mr. Rosario, do you understand the charges brought against you?
> **THE DEFENDANT**: Yes. . . .
> **THE COURT**: Mr. Rosario, do you understand the serious possible consequences of your plea of guilty?
> **THE DEFENDANT**: Yes. . . .
> **THE COURT**: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that the Court imposes?
> **THE DEFENDANT**: Yes. . . .

Criminal Case No. 00-153(SEC), Docket No. 124, pp. 3-8; 10-11.

Next, the government provided to the Court a summary of the evidence in its possession that would be presented if the matter proceeded to trial, wherein Rosario's attorney addressed the court,

> **Mr. AGUAYO**: Your Honor, if I may?  Your Honor, the defendant, Ralph Rosario, agrees with this version of facts and stipulates to the same, but he would like to be clear that what he's pleading guilty to is the drug enterprise, not anything to do with the murder of Edna or anything having to do with murder of this young lady.
> **THE COURT**: That's correct?
> **MS. TORRES**: Yes, Your Honor.
> **THE COURT**: Sir, you have heard the government give their version of the facts which is, if the case went to trial, what they would present to the jury.  Do you agree to your participation as outlined therein?
> **THE DEFENDANT**: Yes.
> **THE COURT**: Do you still want to plead guilty?
> **THE DEFENDANT**: Yes.
> **THE COURT**: How do you plead to the charges before the Court, guilty or not guilty?
> **THE DEFENDANT**:  Guilty.

Criminal Case No. 00-153(SEC), Docket No. 124, p. 12.

During the change of plea hearing, the Court advised Rosario that it would not be able to determine final sentencing guidelines for his case until after a presentence report had been completed

and that the sentence imposed may be different from any sentencing calculation actually discussed with his attorney.  The Court further advised Rosario that, even after his guideline range was determined, it had the authority in some circumstances to depart from the guidelines and impose a sentence that is more or less severe than the sentence called for by the guidelines (Criminal Case No. 00-153(SEC), Docket No. 124, p. 10).  Rosario acknowledged he understood that.  *Id.*

Sentencing was held on September 8, 2002 (Criminal No. 00-153(SEC), Docket No. 125).  At that time the Court asked Rosario if he wished to exercise his right to allocution.  In doing so Rosario stated,

> First of all, Your Honor, it is not my intention to be disrespectful to anyone much less I didn't want to lie either, but I was never in agreement with the plea agreement, I never wanted to plead guilty, I pled guilty only because of the circumstances and I pled guilty although I was innocent, because the circumstances forced me to do that.  It was never my intention to waste anybodys [sic] time but I cannot lie and I cannot remain silent.  If I pled guilty I did it for two reasons, my family, and as I said before, the circumstances, but my desire was always to go to trial.  Although I have to say that I was aware of what I was doing, I want to say before God, that I am telling the truth.

*Id.* at pp. 5-6.

After Rosario made his allocution discussion was held in Court regarding the basis for Rosario's change of plea.  Rosario's attorney explained to the Court that when Rosario stated that he was innocent he was referring to the circumstances regarding the death of Edna Hernandez, a fact that during the change of plea hearing had been clarified.  Rosario's attorney further explained that Rosario realized that he was guilty as to the drug case, but wanted to reiterate that he was innocent with regard to the Edna murder.  Finally, Rosario's attorney advised the Court that Rosario did accept and had voluntarily pleaded guilty to the drug count.  When his attorney asked if what he had told the Court was correct, Rosario responded, "Yes".  *Id.* at p. 7.

The Court then proceeded to sentence Rosario.  In doing so the Court noted that it had reviewed the presentence report and found that Rosario had a leadership role in the instant offense which caused a four-level enhancement warranted pursuant to 3B1.1(a).  The Court stated that it had reviewed the plea agreement and that it would follow the sentence recommendations made by the parties.  Rosario was then sentenced to 262 months, said sentence representing a guideline sentence of 300 months, the one recommended to the Court by the parties, with 38 months credited for time served in federal custody.  Count Two of the Indictment was then dismissed.  After he was sentenced the Court advised defendant Rosario as follows:

> Sir, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there is other fundamental defect in the proceedings that was not waived by your guilty plea.  You also have the statutory right to appeal your sentence under certain circumstances, particularly if you think that the sentence is contrary to law.  However, a defendant may waive those rights as part of a plea agreement and you have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself.  Such waivers are generally enforceable but if you believe that the waiver is unenforceable you can present that theory to the Appellate Court.  With few exceptions any notice of appeal must be filed within ten days of judgment being entered in your case.

*Id.* at pp. 10-11.

Judgment was entered on September 8, 2002, the same day as sentencing (Criminal No. 00-135(SEC), Docket No. 113).  Rosario did not file a direct appeal of his judgment of conviction or sentence.

Thereafter, on September 15, 2003, Rosario filed the present petition pursuant to 28 U.S.C. § 2255 (**Docket No. 1**).  Rosario raises four grounds for relief, all involving ineffective assistance of counsel.  He claims counsel was ineffective in that he

1.   misadvised him concerning his acceptance of the plea agreement, causing Rosario to enter an unknowing, unintelligent and involuntary guilty plea;

2.    failed to file an appeal;

3.    failed to object to the sentencing court's assessment of a four-level enhancement for his leadership role; and,

4.    failed to file a motion to dismiss the indictment for violation of the Department of Justice's "Petite Policy".

On February 9, 2004, a telephone conference/hearing was held to address the issue of Rosario's claim that he was provided ineffective assistance of counsel, specifically the issue concerning whether he had requested counsel to appeal his sentence and whether his attorney failed to file an appeal of the sentence (**Docket No. 10**).[2]

Rosario testified that Attorney Aguayo had previously represented him in a criminal case and that he was very pleased with the services rendered in that previous case.  That previous case charged carjacking and murder, Rosario went to trial and was found guilty, but the case was dismissed on appeal.  However, as to the second criminal case, which is the subject of this § 2255 petition, Rosario did not consider that Attorney Aguayo "did a good job".  Rosario testified that "in one way or another in this case psychologically he [counsel] made me plead guilty when in truth my intentions never were to plead guilty."

Rosario testified that based upon the crimes he was charged with he was subjected to a possible minimum mandatory sentence of ten years to life imprisonment, but that pursuant to the plea agreement he was offered 25 years of imprisonment upon a guilty plea.  Rosario was ultimately sentenced to 21 years and 10 months, being given credit for time already served in federal custody, which equated the recommended term of 300 months of imprisonment.

---

[2]  Attorney Aguayo did not attend this hearing inasmuch as he was involved in other criminal proceedings in another case before this Court.

During the beginning of his testimony Rosario stated that he was "psychologically attacked" by his counsel.  He explained this by testifying that during sentencing Attorney Aguayo told the Court that Rosario had made statements that he did not make.  Regardless of this allegation, the truth is that when asked by the Court during sentencing, Rosario concurred with the statements.[3]  He also described the "psychological attack" explaining that Attorney Aguayo became tired of the case, that he gave up and had no hope of winning the case, and that Rosario was pressured to sign the plea agreement. Nevertheless, Rosario testified and acknowledged that when he walked into the Court for the Change of Plea hearing he knew in advance that the government would recommend a 25-year sentence.

Rosario testified and asserted that he wanted to go to trial, but that his attorney did not want to go to trial.  Rosario testified that he never wanted to plead guilty and that he considered the 25- year sentence he received as too much time.   He further testified that at sentencing he advised the Court that he wanted to go to trial and his attorney did not.  At that time the sentencing judge called a recess and gave Rosario an opportunity to meet with his attorney.  Rosario testified that Attorney Aguayo did not want him to withdraw his guilty plea, but wanted him to withdraw certain statements he had made during his sentencing allocution.  Rosario further testified that the sentencing judge told him it was better to leave things as they were and to stay with the sentence, because Rosario could get a life sentence.

Notably, Rosario testified and accepted that during the change of plea hearing he did not tell the Court that he was being forced to plead guilty but rather that day he told the Court that no one was coercing him to plead guilty.  More so, during the change of plea hearing Rosario told the Court that he agreed with the terms of the plea agreement as outlined by the government.

---

[3]This refers to Rosario's statement that he was innocent of the circumstances surrounding the death of Edna Hernández, but that he was guilty of the drug charge.

During this testimony and when specifically questioned Rosario admitted that during the plea negotiations he had the opportunity to speak and consult with other criminal practitioners. Specifically, he recalled having consulted with Attorneys Juan Ramón Acevedo and Rachel Brill, but that he never told them he felt Attorney Aguayo was forcing him into pleading guilty. Rosario stated that he did not think he had to tell them directly "because [my] attitude spoke for itself." Notably, Attorney Rachel Brill had acted as Rosario's appeal counsel in the previous case which sentence was vacated. Thus, Rosario acknowledged he had the opportunity to consult his plea agreement and decision to plead guilty with someone he trusted.

Rosario testified that after the sentence was imposed he told his attorney to appeal the sentence on the grounds that the drug case he was charged with was used in the previous case to prove the carjacking offense, which judgment was reversed on appeal (**Docket No. 10**, pp. 8-9). Rosario stated that when he told his attorney to appeal his sentence nothing happened, and that he never saw his attorney again. When questioned why he had never demanded in writing for his attorney to appeal the case, Rosario later clarified that he had told his attorney to appeal "ever since the case began." He further explained having expressed to counsel that he wanted to appeal the case if he lost at trial. The fact remains that rather than going to trial, basis for the appeal request, Rosario entered into a plea agreement with the government and proceeded to plead guilty.

Rosario testified that he did not file a notice of appeal because he had no knowledge that he had ten days to appeal and because he does not know how to write in English. Conversely, Rosario testified and acknowledged that at sentencing the judge had apprised him of his right to appeal the sentence so that he knew he had a term within which to appeal the sentence. When questioned, Rosario asserted he never attempted, even *pro se*, to file a notice of appeal, never demanded it in

writing from the defense counsel, never asked that it be done by some other attorney, nor did he place the Court on notice of his intent to appeal.

Finally, Rosario accepted in his testimony that following the date of his sentencing, he never told Attorney Aguayo to file an appeal on his behalf.  Nor did he call Attorney Aguayo or have a family member contact him regarding an appeal.  Also, Rosario now claims he did not write a letter to the sentencing judge and tell him that his attorney was not doing his job, because he thought it inappropriate.  However, Rosario testified that it is false that he never asked Aguayo to file an appeal and engaged in a long explanation of his reasoning, the gist of it being Attorney Aguayo indicating that the criminal case would not be won.  The record also shows that despite having had previous contact with attorneys Brill and Acevedo, petitioner Rosario did not ask any other attorney to file an appeal on his behalf.

Rosario believes that if he had appealed the sentence he would have had a good opportunity to prevail as he believes the government treated him more than unfairly.  Rosario testified that the government plotted and conspired against him and that the government knew that the sentence he is now serving is for the previous case (i.e., carjacking).  No specific facts, other than vengeance, were advanced in support of his claim of unfair treatment nor the legal grounds upon which he might have had prevailed on appeal.

## II.   Conclusions of Law

### A.  Legal Standard

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief.  The prisoner may allege that the: 1) sentence was imposed in violation of the Constitution or laws of the United States; 2) court was without jurisdiction to impose such sentence; 3) sentence was in excess of the maximum authorized by law; and, 4) that the sentence is otherwise

subject to collateral attack.  A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ."  28 U.S.C. § 2255.  However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations.  *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).  In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case.  *Id.*; *accord, Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).

Once sentence has been imposed, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.  *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997).  It is clear law that  "A defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered."  *United States v. Miranda-Santiago*, 96 F.3d 517, 522 (1st Cir. 1996) (*citing United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996)).  A defendant, who never sought to withdraw his plea before the district court and challenges it for the first time on collateral attack under a § 2255 motion, bears a high hurdle.  The defendant must come forward with sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice."  *Hill v. United States*, 368 U.S. 424, 428 (1962).

### B.        Ineffective Assistance of Counsel

The U.S. Supreme Court has set forth a two-prong test to determine whether a defendant has been denied a Sixth Amendment right to counsel.  A conviction may be set aside because of ineffective assistance of counsel if: (a) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984); *accord*, *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982-83

(1st Cir.1989).  This standard applies to challenges to guilty pleas, as well as attacks on convictions resulting from trials.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  When a petitioner challenges a guilty plea on the grounds of ineffective legal assistance, in order to show prejudice he must prove that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59; *accord*, *United States v. Mateo*, 950 F.2d 44, 47 (1st Cir. 1991).  In a post-conviction proceeding, the burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence.  *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993).

### 1.  Voluntariness of Plea

Rosario's first ground for relief is that his counsel was ineffective for advising Rosario to accept the plea agreement and to enter a guilty plea.  Turning to the issue of Rosario's plea, it is first noted that if a defendant's guilty plea has not been entered voluntarily, it has been obtained in violation of due process and is therefore void.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997).  In order to satisfy the due process guarantee, a guilty plea must be entered "with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Noriega-Millan*, 110 F.3d 162, 166 (1st Cir. 1997).

At the time that Rosario pled guilty, the effective applicable rule setting the parameters for acceptance of a guilty plea was contained in Federal Rule of Criminal Procedure 11(c).  Subsequent to his guilty plea, the rule was amended on December 1, 2002, and the rule regarding guilty pleas is

now found at Rule 11(b)[4].   Inasmuch as the change of plea hearing was held prior to the amendment

to Rule 11, same is utilized for analysis purposes.

It is noted that at the time Rosario pleaded guilty, in order to facilitate and enable acceptance

of the entry of voluntary guilty pleas, Federal Rule of Criminal Procedure 11(c), in relevant part,

required district courts to proceed in the following manner prior to accepting a guilty plea:

> **(c) Advice to Defendant.**  Before accepting a plea of guilty or nolo
> contendere, the court must address the defendant personally in open
> court and inform the defendant of, and determine that the defendant
> understands, the following:

---

[4]The amended rule now reads as follows:

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1) Advising and Questioning the Defendant**. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances; and

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

**(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

**(3) Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

Fed.R.Crim.P. 11(b).

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense;  and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;  and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self- incrimination;  and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial. . .

Fed.R.Crim.P. 11(c) (2001).

Compliance with the procedures of Rule 11 enables the district court to determine for itself the voluntariness of the plea and "facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *United States v. López-Pineda,* 55 F.3d 693, 696 (1st Cir. 1995) (citations omitted); *accord, United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997).  If a habeas petitioner maintains that his statements at the Rule 11 hearing were inaccurate, he must "present valid reasons why he should be relieved of his statements".  *Ouellette v. United States*, 862 F.2d 371, 375 (1st Cir. 1988) (*quoting Walker v. Johnston*, 312 U.S. 275, 286 (1941)); *accord, Panzardi-Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989).

Rosario argues that he was advised by his counsel to accept the government's plea offer of 25 years because it would be in Rosario's best interest and because his attorney indicated that he

would appeal the court's denial of a previously filed motion to dismiss based on "the clear showing" of vindictive prosecution.  Rosario contends that his counsel advised him that if the denial of the motion to dismiss was reversed on appeal, then Rosario could withdraw his guilty plea.  Rosario further contends that since his guilty plea was conditioned upon the proposed appeal and counsel did not appeal, the guilty plea is invalid.  Rosario finally asserts that had he not been misled by counsel he would not have pleaded guilty, but would have insisted upon going to trial.  Rosario also argues that the foregoing circumstances render his guilty plea invalid because it was unknowing, unintelligent and involuntarily entered.

In responding to petitioner's motion, Rosario's counsel emphatically denies that any promises were made to Rosario regarding his guilty plea.  More so, counsel points out that the plea agreement contains no mention that Rosario reserved his right to appeal any issue.  He also points to paragraph 13 of the plea agreement which states that the parties agreed that the "written agreement constitutes the complete Plea Agreement between United States, the Defendant and Defendant's counsel.  The United States has made no promises or representations except as set forth in writing in this plea agreement and deny the existence of any other term and conditions not stated herein."  More so, in presenting such claim Rosario neglects the fact he was allowed to consult with two different attorneys during the plea negotiation process.

The record clearly reflects that during the change of plea hearing the District Judge explained to Rosario that he was pleading to one count of the indictment.  Rosario was fully informed of the conditions and consequences of his plea by the Court during his change of plea hearing, and expressly acknowledged such understanding.  Further, the record is clearly points to the fact that Rosario was competent and fully aware of his actions during the change of plea hearing. The record clearly reflects that petitioner was thoroughly examined and responded several times in the negative when questioned

whether he was or in any way felt pressured to plead guilty and waive his trial right. Rosario repeatedly and more than twice assured he was not coerced into pleading guilty or threatened into accepting the plea agreement and that he wanted to waive his right to a trial. Moreover, Rosario indicated that he was satisfied with the legal representation provided by his attorney. He admitted having committed the offense for which he was charged in count one and agreed with the summary of evidence presented by the government. Additionally, petitioner acknowledged that he was aware that by pleading guilty the government would recommend a sentence of 300 months of imprisonment.

There is nothing before the undersigned that indicates that Rosario's plea was involuntary or a result of duress. Inasmuch as Rosario has failed to come forward with sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice", it is **RECOMMENDED** that the petition for relief under 28 U.S.C. §2255 as to the issue of duress and the voluntariness of the plea, be denied and dismissed.

### 2. Failure to File an Appeal

Rosario's next ground for relief is that his trial counsel was ineffective inasmuch as he failed to file an appeal. During the evidentiary hearing Rosario asserted that once he was sentenced he asked his attorney to file an appeal. However, his testimony also makes it clear that following sentencing he did not speak, write or had any contact whatsoever with Attorney Aguayo.

Rosario argues that during the pendency of the proceedings his attorney led him to believe that his conviction would be appealed and that there was a clear understanding prior to the guilty plea, that an appeal would be filed challenging the District Court's denial of the pretrial motion to dismiss the indictment based upon vindictive prosecution. Alternatively, Rosario argues that even if there had not been an understanding that an appeal would be filed, no competent counsel would have failed to file

an appeal based upon the obvious showing of vindictive prosecution.[5] In this regard Rosario overlooks the fact that he had asserted during the hearing that the appeal was to be carried out if convicted at trial.  No mention was ever made to have a conviction or stipulated sentence to be appealed following a guilty plea.

In Attorney Aguayo's response to Rosario's § 2255 petition, Attorney Aguayo indicates that he did not file an appeal because a plea agreement was entered into between the parties and said agreement does not mention any reservation of an appellate right.[6]  More so, he notes that Rosario was not facing an increase in punishment in Criminal Case No. 00-153(SEC) from Criminal Case No. 95-234(DRD) so that an appeal on the issue of vindictive prosecution would have been futile.  *See United States v. Goodwin*, 457 U.S. 368, 373 (1982); *North Carolina v. Pearce*, 395 U.S. 711 (1969).

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodríguez v. United States,* 395 U.S. 327, 89 (1969)); *cf. Peguero v. United States,* 526 U.S. 23, 28, 119 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit").   The Supreme Court explains that "[t]his is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision;  filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes."  *Flores-Ortega*, 528 U.S. at 477.

---

[5] Rosario claims a vindictive prosecution based upon the government's action of indicting him just six days prior to the expiration of the statute of limitations and following his successful appeal of his carjacking conviction.

[6]  It must be noted that upon entering a guilty plea in compliance with Fed.R.Crim.P., Rule 11, a defendant waives his right to appeal his judgment of conviction but may appeal sentencing related issues.  *United States v. Cordero,* 42 F.3d 697 (1st Cir. 1994); *United States v. Rosario*, No. 97-1176, 1997 WL 642071 (1st Cir. 1997).

The testimony of Rosario is that at the time of sentencing he specifically requested counsel to file a notice of appeal. The undersigned and counsel for the government questioned Rosario during the evidentiary hearing. Rosario's credibility regarding his request for an appeal is highly questionable. When faced with direct questions making his assertions less plausible, petitioner made several and different statements, such as having asked for "an appeal since the initial stages if convicted at trial," to appeal "based on the prosecutor's vindictive actions," or simply that after sentence, though unknown how or when, he had asked counsel to appeal his sentence. Indeed, it appears that hindsight was instrument in Rosario's testimony that he requested his attorney to file an appeal. Nevertheless, in his written response, Attorney Aguayo makes no mention and does not challenge or indicate whether Rosario had actually requested that an appeal be filed and/or whether he had declined to do so. Instead Attorney Aguayo asserts that he did not file an appeal because a plea agreement was entered into between the parties and said agreement did not mention any reservation of an appellate right, and because an appeal based upon the grounds suggested by Rosario would have been futile. Inasmuch as Rosario's testimony regarding the assertion that he had asked his counsel to file an appeal is unrefuted, the best course of action while literally adhering to the Supreme Court precedent is a finding that Rosario is entitled to have his judgment vacated and allow him to move for an appeal.[7]

The First Circuit has concluded that when an out-of-time appeal in a criminal case is warranted as the remedy in a § 2255 proceeding based upon a Sixth Amendment violation, it should be effected in the following way:

---

[7] Were Attorney Aguayo, in reacting to the undersigned's Report and Recommendation, to submit under oath specific evidence on the issue at hand, the District Court would be better positioned to re-examine this recommendation, which is solely based on a literal and strict interpretation of Supreme Court precedent and not in Rosario's weak and doubtful assertions.

(1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated;
(2) the same sentence should then be reimposed;
(3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any  criminal sentence; and
(4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by [Federal] Rule [of Appellate Procedure] 4(b)(1)(A)(i).

*United States v. Torres-Otero*, 232 F.3d 24, 32 (1st Cir. 2000) (citing *United States v. Prado*, 204 F.3d 843 (8th Cir. 2000)); *see also United States v. Phillips*, 225 F.3d 1198 (11th Cir. 2000).

Accordingly, the District Court is not required to engage in a de novo re-sentencing, or sentencing hearing, but may instead vacate the initial sentence and summarily reimpose a sentencing judgment identical in all respects to the earlier judgment except, of course, for the date of entry.[8]

*Torres-Otero*, 234 F.3d. at 33.

Based upon the foregoing it is therefore **RECOMMENDED** that Rosario be **GRANTED** § 2255 relief on the issue raised in  Ground Two that trial counsel failed to file an appeal of the sentence in spite of his requests to have such appeal undertaken.  It is further **RECOMMENDED** that the initial sentence be vacated and summarily reimposed so that Rosario may effect a Notice of Appeal.

### 3.  Leadership Role

Rosario also claims a third ground for relief that his counsel was ineffective when he failed to object to the sentencing court's assessment of a four-level enhancement for a leadership role under U.S.S.G. 3B1.1(a) when the plea agreement called for a two-level role enhancement.  Rosario argues that the Court had accepted the government's stipulation to a two-level enhancement during the plea colloquy.  According to Rosario the four-level enhancement resulted in an adjusted offense level of 39

---

[8]  It must be noted that on September 8, 2003, the sentencing court followed the parties' recommendation as to sentence contained within the plea agreement which was acknowledged and stipulated by petitioner Rosario as the proper one.

with a guideline range of 262-327 months of imprisonment as opposed to an adjusted offense level of 37 and a guideline range of 210-262 months of imprisonment with a two-level role enhancement. Both ranges are obtained considering the Criminal History Category (CHC) of I.

The Government argues that Rosario's claim is devoid of merit.  It points to the Plea Agreement wherein the parties stipulated to a two-level adjustment pursuant to U.S.S.G. § 3B1.1, noting, however, that at the change of plea hearing Rosario acknowledged that the terms of the plea agreement were mere recommendations that could be rejected without permitting withdrawal of the plea and that a different sentence could be imposed.  The government also notes that Rosario acknowledged the recommendation for a sentence of 300 months of imprisonment.  More so, the Government points out that the four-point enhancement is supported by the evidence on record since Rosario's role in the offense was extensive; he was the owner and managed a drug point along with co-conspirators; and he used sellers and runners to distribute narcotics.  The government notes that after the Court granted Rosario's request for a 38-month credit and a correction of the criminal history category from IV to I, Rosario's counsel renewed his request for a sentence pursuant to the terms of the plea agreement and indicated that, in considering the time periods Rosario had served in state and federal custody, it had been stipulated by the parties to have Rosario sentenced to a term of 262 months, providing in this way for a 38-month time credit (Criminal No. 00-153(SEC), Docket Nos. 125, p. 3).  Finally, the Government notes that the sentenced imposed was within the Guideline range under either adjusted offense level.

The Sentencing Guideline at issue, U.S.S.G. § 3B1.1(a), provides

> Based on the defendant's role in the offense, increase the offense level as follows:
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

U.S.S.G. § 3B1.1(a).

The sentencing guidelines list multiple factors for determining whether a defendant is a leader

or organizer. *United States v. Robbio*, 186 F.3d 37, 45 (1st Cir. 1999). They include

> (1) whether the defendant exercised decision-making authority; (2) the nature
> of his participation in the commission of  the offense; (3) the recruitment of
> accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5)
> the degree of planning or organizing the offense; (6) the nature and scope of
> the illegal activity; and (7) the degree of control and authority exercised over
> others.

U.S.S.G. § 3B1.1, cmt. n. 4.

None of these factors is dispositive, rather, the test is multi-faceted and requires weighing the

evidence as a whole. *See United States v. Tejada-Beltrán*, 50 F.3d 105, 111 (1st Cir.1995).

During the change of plea hearing Rosario agreed to the following facts:

> defendant was the owner of a drug point located at the Gertulio López Housing
> Project in Juncos, Puerto Rico.  The defendant managed the distribution of
> various types of narcotics, including cocaine, cocaine base and heroin.  The
> defendant, along with other co-conspirators, utilized individuals such as runners
> and sellers to distribute the narcotics.  They would also store narcotics and
> purchase and distribute firearms as a means of protecting their drug enterprise.
> The amount of narcotics stipulated is between 500 grams but less than 1.5
> kilograms of cocaine base crack.

Criminal Case No. 00-153(SEC), Docket No. 124, pp. 11-12.

The record reflects that the four-level enhancement for Rosario's organizer or leadership role

was supported by evidence.  It cannot be said that Rosario's attorney was ineffective when he did not

argue against the four-point enhancement given the evidence to support said adjustment. Indeed, given

the factual scenario Rosario cannot show that his counsel's representation fell below an objective

standard of reasonableness.  More so, because Rosario admitted to what the government's evidence

plainly demonstrated.  *Strickland*, 466 U.S. at 687-88.  In light of the foregoing, counsel cannot be

deemed ineffective for failing to pursue futile arguments.  *See Vieux v. Pepe*, 184 F.3d. 59, 64, *cert. denied*, 528 U.S. 1163 (2000).

Finally, as discussed above, even had Rosario's counsel objected to the four-point enhancement, the undersigned finds it difficult to conclude that the Court would have changed its sentence based on the facts on the record which Rosario agreed with at the change of plea hearing and stipulated to within the plea agreement.  Also, Rosario received the sentenced recommended in his Plea Agreement.  Therefore, not objecting to the sentence was not prejudicial to the petitioner's case. *See Strickland v. Washington*, 466 U.S. 668 (1984).

Accordingly, it is **RECOMMENDED** that the § 2255 motion on based upon Ground Three, failure to object to a sentencing enhancement, be **DENIED**.

### 4.  Motion to Dismiss

Rosario's last ground for relief is that his counsel was ineffective for failing to file a motion to dismiss the indictment on the basis that the Department of Justice violated their "Petite Policy."  He argues that in addition to counsel's written request to the Attorney General, Attorney Aguayo should have filed a motion to dismiss with the Court.  Rosario contends that there is a reasonable probability that the indictment would have been dismissed.

Attorney Aguayo responds to Rosario's allegations by indicating that he sought relief from the Department of Justice's internal "Petite Policy" by writing directly to the Justice Department.  Attorney Aguayo notes that the "Petite Policy"is an internal administrative policy which is unenforceable against the government, and that he was essentially legally precluded from proceeding any further with the issue.

The Government also contends Rosario's argument is without merit.  More so it notes that the "Petite Policy" is a longstanding rule of the Justice Department, is strictly internal, not constitutionally mandated, and not enforceable against the government.

Based upon First Circuit precedent, it would have been futile to file the motion that Rosario believes should have been filed.  "The Petite policy is an internal Justice Department policy forbidding federal prosecution of a person for alleged criminality which was 'an ingredient of a previous state prosecution against that person'; exceptions are made only if the prosecution will serve 'compelling interests of federal law enforcement.'"  *United States v. McCoy*, 977 F.2d 706, 712 (1st Cir.1992) (quoting *Thompson v. United States*, 444 U.S. 248, 248 (1980)) (citation omitted). *See also Rinaldi v. United States*, 434 U.S. 22, 24 n. 5 (1977) (per curiam) (policy bars dual federal-state prosecution). The Supreme Court has recognized that this policy is "not constitutionally mandated."  *Rinaldi v. United States*, 434 U.S. 22, 29 (1977).  Also, the  First Circuit has held that the Petite policy does not create any substantive or due process rights which a criminal defendant may invoke against the government. *See United States v. Booth*, 673 F.2d 27, 30 (1st Cir. 1982).  ("The [Petite] doctrine does not create a corresponding right in the accused"); *United States v. Gary,* 74 F.3d 304, 313 (1st Cir. 1996).    As a result, a defendant cannot seek dismissal of charges if the policy is not complied with. *See Rinaldi v. United States*, 434 U.S. 22 (1977); *United States v. Thompson*, 579 F.2d 1184, 1188 (10th Cir.1978).

Counsel cannot be deemed ineffective for failing to pursue futile arguments. *See Vieux v. Pepe*, 184 F.3d at 64.  Nonetheless, the record reflects that Attorney Aguayo sought relief directly from the Justice Department.  (*See* **Docket No. 4,** Exh. I.)  More so, case law provides that a defendant has no right to enforce the Justice Department's petite Policy.  Hence, Rosario cannot show that his attorney's representation fell below the objective standard of reasonableness in not filing a motion to

dismiss based upon the Justice Department's alleged violation of their "Petite Policy." *See Strickland*, 466 U.S. at 687-88. Quite simply, the filing of the motion would have been futile.

It is therefore **RECOMMENDED** that the Ground Four of the § 2255 motion based upon the failure to file a motion to dismiss be **DENIED**.

## III.    Conclusion

Based upon the foregoing analysis, this Magistrate-Judge **RECOMMENDS** that petitioner's motion under § 2255 (**Docket No. 1**) be **GRANTED** in part and **DENIED** in part as follows:

That the ineffective assistance of counsel claim in:

– Ground One that counsel misadvised Rosario concerning his acceptance of the plea agreement, causing Rosario to enter an unknowing, unintelligent and involuntary guilty plea be **DENIED**;

– Ground Two that counsel failed to file an appeal for the limited reasons set forth above, be **GRANTED**;

– Ground Three that counsel failed to object to the sentencing court's assessment of a four-level enhance for a leadership role be **DENIED**; and,

– Ground Four that counsel failed to file a motion to dismiss the indictment for violation of the Department of Justice's "Petite Policy" be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Rosario's initial sentence be vacated and the Court summarily reimpose a sentencing judgment identical in all respects to the earlier judgment and advice petitioner Rosario, once again, of his right to appeal from said judgment within ten (10) days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States*

*v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).   The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 27th day of April, 2004.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**